IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 118-072 |
| | ) | |
| COLTEN CAUDLE | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Before the Court are Defendant's motion to dismiss, (doc. no. 39), motion to suppress, (doc. no. 38), and supplemental motion to suppress, (doc. no. 58). Upon consideration of the briefs and hearing testimony on March 5, May 24, and June 14, 2019, the Court **REPORTS** and **RECOMMENDS** Defendant's motions be **DENIED**.

## I.    THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND FOR A BILL OF PARTICULARS

The indictment charges Defendant with one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Defendant moves to dismiss the indictment, arguing the mandatory minimum sentence in 18 U.S.C. § 2252A(a)(2) and related Sentencing Guidelines violate the U.S. Constitution, the indictment is unconstitutionally vague because it does not specify the images alleged to be child pornography, and he is entitled to a bill of particulars. (See doc. no. 39.) The government responds there is no mandatory minimum sentence, the indictment sufficiently alleges the essential elements of the crime, and a bill of particulars is unnecessary considering information provided in the indictment and discovery. (Doc. no. 42.) The government is correct as to all three issues.

First, there is no mandatory minimum sentence. Defendant challenges the mandatory minimum sentence in 18 U.S.C. § 2522A(a)(2), but it does not apply because Defendant is charged with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Section 2252A(b)(2) specifies the maximum penalties for possession of child pornography, and while this code section does contain a mandatory minimum sentence, its application is limited to defendants with enumerated prior convictions, of which Defendant has none according to his bail report. Indeed, the penalty certification does not mention a mandatory minimum sentence, and the government confirmed in its response brief there is no mandatory minimum sentence. (Doc. nos. 4, 42.) Defendant's challenge to U.S.S.G. § 2G2.2 is premature because he has not stood trial. See United States v. Woods, 730 F. Supp. 2d 1354, 1370 n.13 (S.D. Ga. 2010) (declining to address challenge to Sentencing Guidelines prior to trial) (citing United States v. Witherspoon, 51 F.3d 1041 (5th Cir. 1995) (Table) (approving district court's rejection as premature of Guidelines challenge raised in motion to dismiss indictment)).

Second, the indictment is not unconstitutionally vague by not specifying each image the government contends to be child pornography. (Doc. no. 39, pp. 2-5.) An indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges, and (3) enables the accused to rely upon a judgment as a bar against double jeopardy. United States v. Walker, 490 F.3d 1282, 1296 (11th Cir. 2007); United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985). The sufficiency of a criminal indictment is determined from its face. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). "'Facial sufficiency is not a high hurdle.'" Woods, 730 F. Supp. 2d at 1372 (citing United States v. Bates, 96 F.3d 964, 970 (7th Cir. 1996)). "An indictment that tracks the language

of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused."  Walker, 490 F.3d at 1296 (citation omitted); see also United States v. Silverman, 745 F.2d 1386, 1392 (11th Cir. 1984) ("The accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense." (citations omitted)).  Ultimately, "'the appropriate test is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards.'"  United States v. McGarity, 669 F.3d 1218, 1235-36 (11th Cir. 2012) (quoting United States v. Varkonyi, 645 F.2d 453, 456 (5th Cir. 1981)), *abrogated on other grounds*, Paroline v. United States, 572 U.S. 434 (2014), *as recognized in* United States v. Rothenberg, 923 F.3d 1309, 1335-37 (11th Cir. 2019).

The one-count indictment alleges the following:

> Beginning at a time unknown to the Grand Jury but at least on or about October 17, 2017, in Richmond County, within the Southern District of Georgia, the defendant, **COLTEN CAUDLE**, did knowingly possess material which contained one or more images of child pornography as defined in Title 18, United States Code, Section 2256(8)(A), that is, any visual depiction of a minor, any person under 18 years old, engaged in sexually explicit conduct, one or more of such images depicting a prepubescent minor or any person under 12 years old engaged in sexually explicit conduct, said images having been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.  All in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

(Doc. no. 3, p. 1.)  The indictment sufficiently notifies Defendant of the charge, presents the essential elements by tracking the language of § 2252A(a)(5)(B), specifies a time frame for the offense conduct of on or about October 17, 2017, and states the location where Defendant allegedly possessed the images as Richmond County, Georgia.  (Id. at 1.)

Defendant will be able to rely upon a judgment under the indictment as a bar against

double jeopardy for any subsequent prosecution for the same offense because any future court "'may refer to the entire record of the prior proceeding and [will] not be bound by the indictment alone.'"  United States v. Steele, 178 F.3d 1230, 1235 (11th Cir. 1999) (quoting United States v. Jaswal, 47 F.3d 539, 542-43 (2d Cir. 1995)).  Here, the government has specified 662 images found on Defendant's digital devices that it contends constitute child pornography, committed to specifying which of the 662 images it will present to the jury at trial no later than thirty days in advance of the trial date, produced its forensic analyses of the devices, and made the images and devices available for inspection by Defendant's attorney and IT expert.

An indictment charging possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) need not describe nor list the images at issue to pass constitutional muster. Many courts to consider this same defense argument have resoundingly rejected it,[1] and these decisions are entirely consistent with longstanding Eleventh Circuit precedent that an indictment need not "'allege in detail the factual proof that will be relied upon to support the charges.'"  Sharpe, 438 F.3d at 1263 n.3 (quoting United States v. Crippen, 579 F.2d 340,

---

[1]See United States v. Bailey, 778 F.3d 1198, 1201 (11th Cir. 2015) (finding no actual prejudice on appeal where indictment did not identify specific image charged); United States v. Tillotson, 490 F. App'x 775, 777-78 (6th Cir. 2012) (finding indictment sufficiently alleged possession despite not specifying images and downloads); United States v. Veit, No. 11-4055-01-CR-C-FJG, 2013 WL 6630921, at *2 (W.D. Mo. Dec. 17, 2013) (finding indictment sufficient despite not specifying files and images); Woods, 730 F. Supp. 2d at 1174 (holding indictment not required to specify images);  United States v. Wall, No. 06-CR-400, 2008 WL 3049948, at *5 (N.D.N.Y. Aug. 1, 2008) (holding indictment need not list images and was sufficient because it alleged elements of offense and approximate time and place of commission); United States v. Bentley, No. 06-CR-155-LRR, 2007 WL 294283, at * 1-2 (N.D. Iowa Jan. 29, 2007) (same).

342 (5th Cir. 1978)[2]; see also Bates, 96 F.3d at 970 ("Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense.").  Indeed, in Bailey, the Eleventh Circuit rejected the defendant's argument a child pornography indictment was fatally deficient because it did not identify the specific images at issue, explaining the defendant could invoke double jeopardy in future proceedings based on the images produced in discovery and introduced into evidence at trial. 778 F.3d at 1201.

Defendant cites no authority supporting a contrary conclusion, and instead only offers United States v. Cain, No. 0:08-CR-0026 (PJS/JSM), 2008 WL 5382005 (D. Minn. Nov. 18, 2008), as an example of the government specifying the offending computer files.  (Doc. no. 39, p. 3).  Cain discusses specific images in the context of calculating the defendant's sentence, and nothing in Cain suggests an indictment is constitutionally inadequate absent specification of the images.  See generally Cain, 2008 WL 5382005.

The forfeiture allegation is also sufficient and not subject to dismissal.  Defendant argues it is "bereft of adequate facts and provides insufficient notice as to what personal property . . . the government contends contained the contraband."  (Doc. no. 39, p. 4.)  In addition to tracking the language of the controlling statute, 18 U.S.C. § 2253, the forfeiture allegation specifically lists six items to be forfeited upon conviction and includes the serial numbers of all but one of the items listed.  (Doc. no. 3, p. 2.)  Defendant does not indicate what, if any, additional information the government could have included.

Finally, Defendant is not entitled to a bill of particulars.  "The purpose of such a bill

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

is 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'"   United States v. Roberts, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986)).   A bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery.   Id. (citing United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990)).   Here, the detailed information provided by the government in its discovery regarding the specific child pornography images purportedly found on Defendant's digital devices is more than sufficient.   When considering an analogous indictment and discovery in Tillotson, the Sixth Circuit affirmed denial of a motion for bill of particulars because, as here, "the indictment—coupled with these discovery materials—adequately notified [Defendant] of the case against him and provided ample opportunity to prepare a defense."  490 F. App'x at 778.

For these reasons, Defendant's motion to dismiss should be **DENIED**.  (Doc. no. 39.)

## II.    THE COURT SHOULD DENY DEFENDANT'S MOTIONS TO SUPPRESS

Defendant argues two searches conducted in March 2018, pursuant to oral authorization by a military magistrate under Military Rule of Evidence 315, violated the Warrant Clause of the Fourth Amendment, Federal Rule of Criminal Procedure 41, and protocol in a military magistrate handbook.  Defendant also argues the military magistrate authorized the searches in the absence of probable cause and issued search authorizations with overly broad descriptions of the items to be seized.  The Court begins its discussion by recounting the procedural history concerning the suppression motions, repeating in full Rule 315, continues with a summary of the hearing testimony, rejects all defense arguments but

the last concerning overbreadth, and ends by explaining why the drastic remedy of exclusion is inappropriate.

### A.      Procedural History Regarding the Suppression Motions

On March 5, 2019, the Court held an evidentiary hearing during which the parties presented evidence concerning initiation of the investigation, the process for obtaining the search authorizations, and execution of the search authorizations.  Following the hearing, the Court entered the following Order:

> After careful consideration of Defendant's motions to suppress, (doc. nos. 38, 58), the Court has made a tentative conclusion the March 13, 2018 search authorization was overly broad because it failed to limit the search and seizure of Defendant's digital media to evidence of the crime under investigation. However, there are gaps in the evidentiary record regarding facts pertinent to the good faith analysis under United States v. Leon, 468 U.S. 897 (1984) and Herring v. United States, 555 U.S. 135 (2009).  See, e.g., United States v. Rosa, 626 F.3d 56, 65 (2d Cir. 2010) (analyzing good faith in similar context); United States v. Riccardi, 405 F.3d 852, 861-64 (10th Cir. 2005) (same). Accordingly, the Court will conduct an evidentiary hearing on Friday, May 24, 2019, at 10:00 a.m., in Courtroom One, Federal Justice Center, 600 James Brown Boulevard, Augusta, Georgia.

(Doc. no. 71.)   At the May 24th hearing, the government failed to present evidence concerning the good faith analysis employed in the decisions cited in the Order. Accordingly, the Court scheduled a third evidentiary hearing for June 14, 2019.  (Doc. no. 73.)  At the June 14, 2019 hearing, defense counsel objected to the third evidentiary hearing, arguing it effectively lowered the government's burden on the issue of good faith.  The Court overruled defense counsel's objection and heard testimony from witnesses called by the government and Defendant, explaining the Court would not settle for an incomplete evidentiary record that would preclude a merits-based determination of the good faith inquiry.

**B.      Military Rule of Evidence 315**

Military Rule of Evidence 315 provides in full as follows:

**(a) General rule**

Evidence obtained from reasonable searches conducted pursuant to a search warrant or search authorization, or under the exigent circumstances described in this rule, is admissible at trial when relevant and not otherwise inadmissible under these rules or the Constitution of the United States as applied to members of the Armed Forces.

**(b) Definitions**

As used in these rules:

    (1)  "Search authorization" means express permission, written or oral, issued by competent military authority to search a person or an area for specified property or evidence or for a specific person and to seize such property, evidence, or person. It may contain an order directing subordinate personnel to conduct a search in a specified manner.

    (2)  "Search warrant" means express permission to search and seize issued by competent civilian authority.

**(c) Scope of Search Authorization**

A search authorization may be valid under this rule for a search of:

    (1)  the physical person of anyone subject to military law or the law of war wherever found;

    (2)  military property of the United States or of nonappropriated fund activities of an Armed force of the United States wherever located;

    (3)  persons or property situated on or in a military installation, encampment, vessel, aircraft, vehicle, or any other location under military control, wherever located; or

    (4)  nonmilitary properly within a foreign country.

**(d) Who May Authorize**

A search authorization under this rule is valid only if issued by an impartial individual in one of the categories set forth in subdivisions (d)(1) and (d)(2). An otherwise impartial authorizing official does not lose impartiality merely because he or she is present at the scene of a search or is otherwise readily available to persons who may seek the issuance of a search authorization; nor does such an official lose impartial character merely because the official

previously and impartially authorized investigative activities when such previous authorization is similar in intent or function to a pretrial authorization made by the United States district courts.

(1) *Commander*.   A commander or other person serving in a position designated by the Secretary concerned as either a position analogous to an officer in charge or a position of command, who has control over the place where the property or person to be searched is situated or found, or, if that place is not under military control, having control over persons subject to military law or the law of war; or

(2) *Military Judge or Magistrate*.   A military judge or magistrate if authorized under regulations prescribed by the Secretary of Defense or the Secretary concerned.

**(e) Who May Search**

(1) *Search Authorization*.   Any commissioned officer, warrant officer, petty officer, noncommissioned officer, and, when in the execution of guard or police duties, any criminal investigator, member of the Air Force security forces, military police, or shore patrol, or person designated by proper authority to perform guard or police duties, or any agent of any such person, may conduct or authorize a search when a search authorization has been granted under this rule or a search would otherwise be proper under subdivision (g).

(2) *Search Warrants*.   Any civilian or military criminal investigator authorized to request search warrants pursuant to applicable law or regulation is authorized to serve and execute search warrants.   The execution of a search warrant affects admissibility only insofar as exclusion of evidence is required by the Constitution of the United States or an applicable federal statute.

**(f) Basis for Search Authorizations**

(1) *Probable Cause Requirement*.   A search authorization issued under this rule must be based upon probable cause.

(2) *Probable Cause Determination*.   Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched.   A search authorization may be based upon hearsay evidence in whole or in part. A determination of probable cause under this rule will be based upon any or all of the following:

(A)   written statements communicated to the authorizing official;

(B)     oral statements communicated to the authorizing official in person, via telephone, or by other appropriate means of communication; or

(C)     such information as may be known by the authorizing official that would not preclude the officer from acting in an impartial fashion.  The Secretary of Defense or the Secretary concerned may prescribe additional requirements through regulation.

**(g) Exigencies**

Evidence obtained from a probable cause search is admissible without a search warrant or search authorization when there is a reasonable belief that the delay necessary to obtain a search warrant or search authorization would result in the removal, destruction, or concealment of the property or evidence sought. Military operational necessity may create an exigency by prohibiting or preventing communication with a person empowered to grant a search authorization.

**C.      Testimony of Special Agent James McGee**

SA McGee, from U.S. Army Criminal Investigation Command at Fort Gordon, Georgia, interviewed Defendant's wife on March 13, 2018, concerning accusations she made earlier the same day to Cpt. Timothy Graziano, Defendant's company commander, of Defendant possessing child pornography.   (Court's recording system, *For the Record* (hereinafter "FTR") 11:31:39 –11:31:55; 12:06:38 – 12:06:54.)[3]  Mrs. Caudle provided an oral narrative and memorialized her allegations in a sworn statement with a detailed narrative of instances when she observed child pornography on Defendant's devices.  Her statement concludes with a transcript of SA McGee's follow-up interview with her.  (Doc. no. 41-2, pp. 2-3.)

---

[3]All FTR citations refer to the March 5, 2019 hearing unless the citation specifies another hearing date.

Cpt. Daniel Burford is Fort Gordon's military magistrate, statutorily defined by 10 U.S.C. § 826a as a licensed attorney who "is certified to be qualified, by reason of education, training, experience, and judicial temperament, for duty as a military magistrate by the Judge Advocate General . . . ."  By telephone on March 13, 2018, SA McGee described to Cpt. Burford the information provided by Mrs. Caudle and sought oral authorization to search Defendant's person and barracks and seize all of Defendant's digital media.  (FTR 11:36:04 – 11:37:34.)   After reviewing Mrs. Caudle's written statement and conducting a second phone conversation with SA McGee, Cpt. Burford verbally authorized the search and seizure of all digital media on Defendant's person and in his barracks.  (FTR 11:38:25 – 11:38:43.) SA McGee does not recall specifying to Cpt. Burford the digital devices he would attempt to seize, even though knew he would seize at least one laptop and cell phone.  (FTR 12:00:58 – 12:01:33.)

Because Defendant was a cyber student, SA McGee was concerned about possible spoliation of the digital evidence he sought and executed the search and seizure expeditiously based on the verbal authorization, without first attempting to further corroborate Mrs. Caudle's statement or investigate her veracity.   (FTR 11:58:30 – 11:58:53; 12:08:00 – 12:08:52.)  At approximately 8:30 p.m. on March 13, 2018, SA McGee executed the search at Defendant's barracks with the assistance of SA Dereck Williams.   (FTR 11:41:36 – 11:41:56.)   After informing Defendant of the verbal search authorization, SAs McGee and Williams seized from Defendant's person one cell phone and seized from his barracks one laptop, three thumb drives, and two cell phones.  (FTR 11:45:11 – 11:47:48.)

The next day, March 14, 2018, SA McGee prepared a written search authorization request and supporting affidavit describing the same information he provided to Cpt. Burford

the day before and identifying the digital media seized during the search.  (FTR 11:48:27 – 11:48:50.)   Criminal Investigation Division ("CID") investigators are required to file a separate return listing the evidence seized, and SA McGee made an administrative error by including the return in his affidavit.  (FTR 11:48:50 – 11:49:26.)  SA McGee digitally signed the forms and emailed them to Cpt. Burford, who digitally signed and returned them.  (FTR 11:53:10 – 11:53:52.)

At the May 24, 2019 hearing, SA McGee testified he understood the search authorization to be limited to evidence Defendant possessed child pornography.  (FTR 5/24/2019, 10:09:11 – 10:09:31.)   At the time he sought the search authorization and executed the initial search and seizure, SA McGee was not aware of any legal requirement that the search authorization must specify the types of information within the devices he was allowed to search for and seize.  (FTR 5/24/2019, 10:43:00 – 10:43:44.)  SA McGee was not personally involved in the subsequent forensic examination of the devices.  (FTR 5/24/2019, 10:13:54 – 10:15:02.)

### D.   Testimony of Special Agent Larry Ervin

On March 14, 2018, Cpt. Graziano issued a thirty-day protective order prohibiting Defendant from direct or indirect contact with Mrs. Caudle, including electronic communication.  (FTR 12:19:38 – 12:20:08.)  On March 24, 2018, Mrs. Caudle reported a violation and Cpt. Graziano issued a second no-contact order.  (FTR 12:20:14 – 12:20:29; 12:27:57 – 12:28:09.)  When SA Larry Ervin interviewed Mrs. Caudle on March 28, 2018, she alleged Defendant hacked into and manipulated her personal online accounts, including social media, and altered her access to a Department of Defense account.  (FTR 12:20:42 – 12:21:08.)  She believed Defendant was the culprit in part because only he knew her login

and password information.  (FTR 12:21:08 – 12:21:18.)  Mrs. Caudle signed a sworn statement and provided documentation of the hacking incidents.  (FTR 12:21:47 – 12:22:05.)  During a second interview two days later, Mrs. Caudle informed SA Erwin her phone was deactivated and she suspected Defendant, providing screenshots and emails showing modifications to her account by someone using a Samsung Galaxy phone near Augusta, Georgia.  (FTR 12:23:08 – 12:23:20.)  Mrs. Caudle stated Defendant obtained a new Samsung Galaxy phone after seizure of his other cell phones.  (FTR 12:23:20 – 12:23:30.)

On March 30, 2018, SA Erwin briefed Cpt. Burford by telephone and received oral authorization to search for and seize a Samsung Galaxy phone in Defendant's possession.  (FTR 12:23:33 – 12:24:20.)  SA Erwin did so by telephone rather than in person because Cpt. Burford was in Florida following surgery.  (FTR 12:30:12 – 12:30:25; 12:32:37 – 12:32:40.)  During the briefing, SA Erwin provided the details of the investigation, read a portion of Mrs. Caudle's statement, and described the supporting documentation.  (FTR 12:24:30 – 12:24:43.)  SA Erwin also provided Cpt. Burford with Mrs. Caudle's sworn statement and supporting documentation.  (FTR 12:24:43 – 12:24:50.)

On March 30, 2018 at the barracks, SA Erwin informed Defendant of the verbal search authorization and took the phone from Defendant's hand when he refused to surrender it.  (FTR 12:27:16 – 12:27:48.)  SA Erwin left the barracks, completed evidence vouchers, and stored the phone in a locker.  (FTR 12:28:46 – 12:29:08.)  On April 2, 2018, SA Erwin completed the written affidavit and application and emailed them to Cpt. Burford.  (FTR 12:29:08 – 12:29:23.)  Within an hour, Cpt. Burford returned the documents with his digital signature.  (FTR 12:29:23 – 12:29:27.)  The affidavit repeated the information provided to Cpt. Burford over the phone before he authorized the search.  (FTR 12:30:00 – 12:30:06.)

### E.    Testimony of Special Agent Dereck Williams

SA Williams became involved in the investigation on March 13, 2018 after SA McGee obtained the first search authorization.  (FTR 6/14/2019, 2:22:36 – 2:22:55.)  SA Williams understood the investigation concerned Mrs. Caudle's allegations of seeing child pornography on Defendant's devices.  (FTR 6/14/2019, 2:22:55 – 2:23:10.)  SA Williams did not speak with Mrs. Caudle personally about her allegations.  (FTR 6/14/2019, 2:47:05 – 2:47:10.)  SA Williams's role in the investigation was to analyze and review the digital media.  (FTR 6/14/2019, 2:47:53 – 2:47:57.)

SA Williams testified CID procedure for searching digital media in all cases involves a two-part process.  First, the agent attaches the digital media to the analyzing software, Cellebrite, which extracts data from the phone and creates a Universal Forensic Extraction Device ("UFED") "dump file."  (FTR 6/14/2019, 2:23:31 – 2:24:06.)  Second, Cellebrite organizes the data into specific categories, such as photographs, videos, web content, and contacts.  (FTR 6/14/2019, 2:24:20 – 2:24:19.)  SA Williams performed this procedure on Defendant's Google Pixel 2 cell phone, except that he never extracted telephone calls and text messages for loading into Cellebrite, two categories of data he believed could not contain evidence of child pornography possession.  (FTR 6/14/2019, 2:28:00 – 2:24:46.)

SA Williams only searched the Cellebrite categories he believed would uncover evidence of Defendant possessing child pornography because he believed the search authorization was limited to such evidence.  (FTR 6/14/2019, 2:29:41 – 2:30:54.)  The software allows the analyst to "tag" pertinent information for segregation, and SA Williams only tagged evidence related to possession of child pornography.  (FTR 6/14/2019, 2:32:16 – 2:33:46.)  In addition to finding more than 600 images of child pornography, SA Williams

found multiple cookie files, which are files downloaded onto a device when it visits a website, and other artifacts evidencing visits to child pornography websites.   (FTR 6/14/2019, 2:31:40 – 2:32:16.)

In addition to the search of the Google Pixel 2, SA Williams requested SA Jerad Livingston, a digital forensic examiner stationed at Fort Bragg, analyze the remaining devices seized from Defendant.  (FTR 6/14/2019, 2:34:20 – 2:35:08; see also doc. nos. 75-1, 75-2.)   The written request asked SA Livingston to "determine the presence of child pornography on the devices" and also determine if anyone actively searched for child pornography on the devices.  (FTR 6/14/2019, 2:38:40 – 2:39:03; doc. no. 75-1.)   SA Williams attached to this request a copy of the reports previously generated and the written search authorization.  (FTR 6/14/2019, 2:39:07 – 2:39:22; doc. no. 75-1.)   SA Livingston's report of his forensic examination states his search efforts were limited to evidence of possession, receiving, or reviewing of child pornography.  (Doc. no. 75-2.)

## F.     Testimony of Defense IT Expert Jim Persinger

At the final hearing on June 14, 2019, Defendant called his IT expert Jim Persinger, CEO of PM Investigations, Inc., who specializes in performing forensic examinations relating to cybercrimes and writing software for law enforcement.  (FTR 6/14/2019, 2:52:52 – 3:53:06.)   Mr. Persinger has eighteen years of IT experience as an expert in civil and criminal cases.  (FTR 6/14/2019, 2:54:06 – 2:54:24.)   He has analyzed approximately 2,600 cases and examined more than 6,000 digital devices.  (FTR 6/14/2019, 2:54:29 – 2:54:41.)   Mr. Persinger also has two patents related to cybercrime in digital forensics.   (FTR 6/14/2019, 2:54:41 – 2:54:47.)

Mr. Persinger testified Cellebrite would have allowed SA Williams to deselect categories of digital information that would have never transferred from the phone to the Cellebrite dump file, which would have ensured SA Williams would not have access to categories of information with no possible relevance to the investigation.  (FTR 6/14/2019, 2:55:41 – 2:56:12.)  Instead, SA Williams only deselected the categories for text messages and phone calls and therefore transferred into Cellebrite several irrelevant categories, such as text files and cookies, that could not contain images or videos of child pornography.  (FTR 6/14/2019, 2:55:24 – 2:55:41; 2:56:12 – 2:56:32.)   On cross examination, however, Mr. Persinger acknowledged images and videos are not the only types of information that can serve as evidence of possession of child pornography.  (FTR 6/14/2019, 3:05:30 – 3:05:51.) Furthermore, cookies and text files may show the device was used to access websites containing child pornography and thus could constitute evidence of possession of child pornography.  (Id.)  Finally, Mr. Persinger testified, based on his own analysis, he had no evidence to suggest SA Williams did not in fact limit his Cellebrite review to categories that might contain evidence of child pornography.  (FTR 6/14/2019, 3:09:53 – 3:11:02.)  In other words, Mr. Persinger did not find any suggestion in his analysis that SA Williams did not do exactly what SA Williams described in his testimony; i.e., limit his forensic examination to the categories of information he reasonably believed would uncover evidence of Defendant possessing child pornography.

### G.   Legal Analysis

#### 1.   Rule 315 Properly Permits Oral Search Applications and Authorizations

Defendant argues both oral search authorizations violate the Warrant Clause of the Fourth Amendment as well as the requirement of a written search warrant in Federal Rule Criminal Procedure 41.  However, a chorus of federal precedent from across the United States confirms the constitutionality and legality of oral search applications and authorizations under Rule 315 because "'a search authorized under the Military Rules is 'independent of the Warrant Clause of the Fourth Amendment.'" United States v. Funderburg, No. 1:08-cr-43-TFM, 2008 WL 2939522, at *2 (M.D. Ala. July 25, 2008) (quoting United States v. Reppert, 76 F. Supp. 2d 185, 189 (D. Conn. 1999)).  Similarly stated by the Seventh Circuit nearly three decades ago, "in the military environment, the Warrant Clause plays no part in the determination of probable cause." United States v. Chapman, 954 F.2d 1352, 1370 (7th Cir. 1992).  Balancing the privacy rights of servicemen against the needs of the military is a delicate task, and the procedure adopted by Rule 315 is "a finely tuned accommodation of the servicemember's privacy interests grounded in the Fourth Amendment . . . ." Id. at 1369 (citing United States v. Stuckey, 10 M.J. 347, 358-61 (C.M.A. 1981)).

Thus, "oral affidavits and oral authorization of search warrants without contemporaneous writing are free from any constitutional infirmity." United States v. Brown, 784 F.2d 1033, 1037 (10th Cir. 1986) (citing Wallis v. O'Kier, 491 F.2d 1323, 1325 (10th Cir. 1974), cert. denied, 419 U.S. 901 (1974)); see also United States v. Banks, 451 F.3d 721, 727 n.1 (10th Cir. 2006) (citing Brown approvingly); Chapman, 954 F.2d at 1367

("The constitutional legitimacy of such military searches [as those authorized under MRE 315] is hardly a novel proposition.").  "If the search was valid as a matter of military law when made, it was valid for all purposes, and admission of the fruits of the search ought not to be dependent on the jurisdiction in which the subsequent trial is had."  United States v. Grisby, 335 F.2d 652, 656 (4th Cir. 1964); see also Reppert, 76 F. Supp. 2d at 189 ("If a search was valid under military law, then it is admissible in this court.").

Courts have suggested compliance with Rule 41 may nevertheless be required where (1) civilian federal authorities are involved with the searches; or (2) there was no military interest in the search and the application for a verbal search authorization was simply an effort to evade the Warrant Clause.  Chapman, 954 F.2d at 1366-72; Reppert, 76 F. Supp. 2d at 189-91.  However, these scenarios are plainly not the case here.

"'[A]s long as the military respects the rights guaranteed by the Fourth Amendment's prohibition against unreasonable searches and seizures, the military need not be bound by all of the procedural formalities that are imposed upon civilian law enforcement agencies.'" Brown, 784 F.2d at 1037 (quoting United States v. Rogers, 388 F. Supp. 298, 301 (E.D. Va. 1975)).  The searches and seizures at issue here complied with Rule 315, and as explained below, they are reasonable under the Fourth Amendment with only one exception that does not merit exclusion.

### 2.    The Military Magistrate Complied with Best Practices in a Handbook, and Any Deviation Would Not Warrant Suppression

Defendant argues Cpt. Burford deviated from best practices memorialized in a Standing Operating Procedures handbook instructing military magistrates to (1) issue a written search authorization prior to a search absent extraordinary circumstances; (2) inquire

about the veracity of an informant and age of the information; (3) take notes of conversations concerning the request and authorization; (4) explicitly authorize nighttime searches; (5) limit the time period of the search; and (6) inquire about the investigating agent's experience. (Doc. no. 58, pp. 1-4.)  Suppression would be unnecessary even if Cpt. Burford deviated in all six ways alleged by Defendant.  The handbook recognizes as much, explaining "[f]ailure to comply with any of the above administrative guidelines will not render a search or seizure unlawful . . . ."  (Doc. no. 57-2, p. 10.)  A handbook violation might warrant suppression if it rose to the level of violating the Fourth Amendment, but none of the violations alleged by Defendant rise to such a level.  Nor is there support for a finding any handbook violation occurred.

First, the oral nature of the search authorization does not necessitate suppression because the agents complied with Rule 315, which, as explained in § II.G.1, *supra*, properly allows oral search authorizations in the military context.  Nor does there appear to be a violation of the handbook.  The handbook states, "[A]bsent extraordinary circumstances, a military magistrate should issue only written search authorizations based on written, sworn statements."  (Id. at 8.)  The handbook does not define "extraordinary circumstances," and one could reasonably determine the circumstances here were extraordinary.  As SA McGee testified, both searches were efforts to obtain electronic evidence from a soldier with specialized training in cyber warfare, and SA McGee reasonably concluded this constituted an extraordinary circumstance requiring immediate action to reduce the risk of spoliation. That the informant was Defendant's wife increased the risk Defendant would learn of the investigation before the searches could occur.  Furthermore, the second search originated with Mrs. Caudle accusing Defendant of hacking into her personal online accounts, which

one could also reasonably conclude is an extraordinary circumstance requiring immediate action.

Second, there is no evidence to suggest Cpt. Burford did not consider Mrs. Caudle's veracity or the age of her information.  The handbook instructs military magistrates to "[a]sk specific questions about the source of any information described by the person appearing before you to determine who told the person the information, how current the information is, how the person knows that information, whether the information was provided under oath, and how the person is related to the matter under investigation or persons being investigated . . . ."  (Id. at 9.)  SAs McGee and Erwin provided a wealth of information to Cpt. Burford concerning Mrs. Caudle's allegations, and this information was sufficient to discern the strength, veracity, and age of her allegations.  Furthermore, the handbook contains an entire paragraph of factors a military judge should consider when determining the strength of an informant's allegations.  When one compares the analysis recommended by the handbook with the information and materials provided to Cpt. Burford, it is clear he complied with both the spirit and substance of the handbook recommendations.

Third, concerning the criticism Cpt. Burford did not inquire about the experience of SAs McGee and Erwin, there is no evidence to suggest Cpt. Burford failed to make such an inquiry, and it is abundantly clear from the testimony of SAs McGee and Erwin they work frequently with Cpt. Burford such that there would be no need for this inquiry in the first instance.  Fourth, the handbook states the military magistrate should "[t]ake notes during the entire process of receiving information."  (Id.)  However, there is no evidence suggesting Cpt. Burford failed to take notes.  Even if he failed to do so, the agents provided him with written documentation of their investigation.

20

Fifth, there is no violation of the requirement for express authorization of a nighttime search.  (<u>Id.</u> at 10.)  "The Fourth Amendment does not contain any time limitations on reasonable searches and seizures."  <u>United States v. Williams</u>, 871 F.3d 1197, 1202 (11th Cir. 2017) (citing U.S. Const. amend. IV; <u>United States v. Gerber</u>, 994 F.2d 1556, 1559 (11th Cir. 1993)).  Although Rule 41 does not apply in this military context, as described in § II.G.1, *supra*, its restriction on nighttime searches provides context for determining the reasonableness of the execution of the March 13th search authorization.

Rule 41 requires warrants to be executed during the daytime hours of 6:00 a.m. to 10:00 p.m. unless expressly authorized by a judge for good cause.  SA McGee's search from 8:30 p.m. until 10:30 p.m. can hardly be considered a purely nighttime search for which explicit authorization is required, and suppression would be unwarranted even if it were.  A Rule 41 violation requires suppression only where there is (1) prejudice because the search might not have occurred or been so abrasive if the rule had been followed, or (2) intentional and deliberate disregard of the rule.  <u>Williams</u>, 871 F.3d at 1203 (citing <u>Gerber,</u> 994 F.2d at 1560).  Defendant has not established prejudice from the timing of the search or intentional and deliberate disregard of the daytime requirement.

Sixth, concerning the criticism the search authorization contained no time limit, the handbook states a military magistrate "normally should not put any time limits on the search." (Doc. no. 57-2, p. 12.)  Here, the agents executed both initial searches on the same day of authorization.  (Doc. nos. 41-4, 41-6.)  While the handbook suggests initial seizure of electronic evidence should take place within ten days of issuance, "a more expansive time frame for off-site copying/review/electronic search would be consistent with federal practice . . . ."  (<u>Id.</u>)  A more expansive time frame is certainly justified for the complex task of

searching digital media.  Furthermore, Defendant cannot claim an adverse effect on his possessory interests in the seized devices, because he has not moved the Court for their return.  Federal Rule of Criminal Procedure 41(g) states "[a] person aggrieved . . . by the deprivation of property may move for the property's return."  See also United States v. Ilonzo, No. 1:12-CR-276-SCJ-GGB, 2015 WL 5827598, at *20-21 (N.D. Ga. Oct. 6, 2015) (finding no adverse effect on legitimate interests in seized computers where defendant failed to seek return of evidence).

Finally, to the extent Defendant criticizes execution of the search authorizations as unreasonable, blanket suppression is not appropriate unless the agents' conduct "exceeded any reasonable interpretation of the warrant's provisions."  United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007) (citation omitted).  "Absent a flagrant disregard of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized, or constitute reversible error on a direct appeal from conviction."  Id. (citations omitted).  There is no evidence of flagrant disregard of the terms of the search authorization or that agents seized items unrelated to the crimes at issue.  Thus, even if Defendant were able to show execution of the search authorizations was unreasonable, it would not affect the admissibility of the relevant digital media the officers seized.

### 3.    Probable Cause Supported the Search Authorizations

Defendant argues the search authorizations were not supported by probable cause because:  (1) SA McGee did not adequately determine whether Mrs. Caudle was a reliable informant; (2) the information provided by Mrs. Caudle was stale; (3) the second search authorization was not based on violation of a criminal statute; and (4) the first search

authorization affidavit included an inventory of the items seized.  (Doc. no. 38, p. 3; doc. no. 58, pp. 2-3, 6.)  All four arguments fail.

A military search must be reasonable and based on probable cause, and "the probable cause standard under Rule 315 is the same 'totality of the circumstances' standard that the Supreme Court adopted in Illinois v. Gates . . . ."  Chapman, 954 F.2d at 1372.  A court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination.  United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011) (citing United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999)).  Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).  The issuing judge must make a "practical, common sense decision" whether, given all the information in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]"  Brundidge, 170 F.3d at 1352 (quoting Gates, 462 U.S. at 232).

There was a substantial basis for Cpt. Burford's two findings of probable cause. Indeed, on both occasions, he relied on the sworn testimony of Mrs. Caudle who claimed to be an eyewitness to her husband's commission of the offenses.  Her allegations were specific and, in the second instance, supported by documentation of the alleged hacking incidents. See id. at 1353 ("An 'explicit and detailed description of alleged wrongdoing, along with a

statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case.'") (quoting <u>Gates</u>, 462 U.S. at 234).

Mrs. Caudle stated she first observed "hundreds or thousands" of images of child pornography in a folder entitled "Jailbait Girls" on Defendant's computer in May or June 2017.  (Doc. no. 41-2, p. 2.)  Mrs. Caudle described some of the images she saw in detail upon questioning.  (<u>Id.</u> at 3.)  She recounted confronting Defendant with the images and his denial they were child pornography.  (<u>Id.</u> at 2.)  Mrs. Caudle also described in detail the images she found on his cell phone in November 2017 and stated Defendant admitted to her he had a problem and needed help.  (<u>Id.</u> at 2, 3.)  Mrs. Caudle also stated she observed Defendant backing up data from his cell phone to his computer every couple of months.  (<u>Id.</u> at 3.)

Mrs. Caudle read aloud the affidavit paragraph, swore the information therein was true, and signed the sworn statement.  (FTR 11:35-:38 – 11:36:15; doc. no. 41-2, p. 4.)  SA McGee recounted this information in his oral briefing to Cpt. Burford, who read Mrs. Caudle's sworn statement prior to issuance of the first search authorization.  (FTR 11:36:60 – 11:37:34; 11:38:03 – 11:38:43.)  Mrs. Caudle's sworn statement would subject her to criminal liability if fabricated.  <u>Williams</u>, 177 F. App'x at 919.  Thus, under the totality of the circumstances, Mrs. Caudle's statement was sufficiently reliable to establish probable cause Defendant was in possession of child pornography.

As to the March 30th search authorization, Mrs. Caudle gave a sworn, detailed statement regarding the changes to her accounts, provided SA Erwin with screenshots and emails verifying the hacking incidents, and stated, as is often the case, only her husband knew her login and password information.  (FTR 12:21:08 – 12:21:18; 12:21:47 – 12:23:08.)

Jason Shelby, a friend of Mrs. Caudle and Defendant, corroborated Mrs. Caudle's hacking accusations.  (Id.)  Furthermore, Mrs. Caudle stated Defendant had recently purchased a Samsung Galaxy phone and showed SA Erwin a screenshot indicating changes to one of her accounts was made by a Samsung Galaxy phone near Augusta, Georgia.  (Doc. no. 41-6, p. 2.)  Prior to issuance of the search authorization, SA Erwin provided the details of the investigation to Cpt. Burford, read him a portion of Mrs. Caudle's statement, and informed him of the emails and screenshots confirming the modifications of the accounts.  (FTR 12:24:30 – 12:24:43.)  Mrs. Caudle and Mr. Shelby's statements and the screenshots were sufficient to establish probable cause Defendant violated the military protective orders.

Defendant argues probable cause did not exist in either instance because the agents did not investigate Mrs. Caudle's veracity or independently corroborate her accusations. Defendant does not, however, provide examples of how the agents could have independently corroborated claims Defendant possessed child pornography on his personal digital media or hacked into Mrs. Caudle's personal accounts.  While determining an informant's veracity and independently corroborating information are relevant considerations, they are not essential requirements.  Brundidge, 170 F.3d at 1353 ("[I]ndependent police corroboration has never been treated as a requirement in each and every case."); see also United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").  The informant's veracity and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations:  a deficiency in one may be compensated for, in

determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 462 U.S. at 233.

The most analogous decision leaving no doubt concerning the existence of probable cause here is United States v. Lovvorn, 524 F. App'x 485, 487 (11th Cir. 2013). Therein, the Eleventh Circuit held probable cause existed to search the defendant's computer for child pornography based solely on a sworn affidavit from the defendant's wife alleging the defendant owned a home computer containing child pornography and she had witnessed him viewing child pornography.

### 4.    The Information Provided by Mrs. Caudle Was Not Stale

Defendant argues staleness because Mrs. Caudle most recently saw child pornography on Defendant's computer in November 2017 and the first search authorization issued on March 13, 2018. (Doc. no. 58, p. 4.) The argument fails because, as the Eleventh Circuit has explained when rejecting similar staleness arguments, "pedophiles rarely, if ever, dispose of child pornography." United States v. Touset, 890 F.3d 1227, 1237-38 (11th Cir. 2018); see also United States v. McBurnette, 382 F. App'x 813, 815 (11th Cir. 2010) (finding child pornography information two years old not stale).

### 5.    The March 30th Search Authorization Issued Based on Probable Cause Defendant Committed a Crime

Defendant argues the March 30th search authorization was not supported by probable cause because he was accused of violating a military protective order rather than committing a crime. (Doc. no. 58, p. 5.) However, the willful and knowing violation of any lawful military order is a crime punishable by a term of imprisonment pursuant to 10 U.S.C. § 892. See United States v. Gifford, 75 M.J. 140, 146 (C.A.A.F. 2016) ("[A] violation of Article 92,

UCMJ, can be punished with a dishonorable discharge, forfeiture of all pay and allowances, and confinement for up to two years."); <u>United States v. Bart</u>, 61 M.J. 578, 582 (N-M Ct. Crim App. 2005) (stating violations of Navy Regulation trigger criminal sanctions under § 892); <u>United States v. Cochrane</u>, 60 M.J. 632, 634 (N-M Ct. Crim. App. 2004) ("Although general orders and regulations are not in and of themselves statutes, when a violation occurs and is charged under Article 92, UCMJ, 10 U.S.C. § 892, such orders and regulations are subject to the same rules of construction as are statutes and the punitive articles of the UCMJ.").

> **6.   Including an Inventory of Items Seized in the Subsequent Written Affidavit Does Not Render the Search Authorization Invalid**

Defendant argues the March 13th search authorization is invalid because the written affidavit completed the day after the search contains an inventory of items seized during the search.  (Doc. no. 38, p. 3; doc. no. 58, p. 4.)  The administrative error is immaterial and had no actual effect on either Cpt. Burford's probable cause determination or execution of the search.

> **7.   The March 13th Search Authorization Was Overly Broad Because of its Failure to Specify Information to be Collected and Retained from Digital Media**

Finally, Defendant argues the search authorizations violated the Fourth Amendment by:  (1) allowing seizure of all digital media; (2) failing to specify information to be retained from digital media collected during the first search; and (3) failing to expressly authorize off-site examination.   (Doc. no. 58, p. 3.)   The Court agrees with the second argument concerning overbreadth but not the first and third, and, as explained in § II.G.8, *infra*, the overbreadth does not warrant the drastic remedy of exclusion.

27

The Fourth Amendment's particularity requirement prevents "general, exploratory rummaging in a person's belongings."  United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982) (citations omitted).  A warrant that fails sufficiently to particularize the place or things to be seized is unconstitutionally overbroad, and the resulting search is unconstitutional.  United States v. Travers, 233 F.3d 1327, 1329-30 (11th Cir. 2000); United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013).  A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized.  United States v. Bradley, 644 F.3d 1213, 1259 (11th Cir. 2011).  Technical perfection in the description is not required, but rather the Court should apply a practical margin of flexibility.  Id.

Federal courts routinely uphold warrants authorizing retention or production of an entire email account, computer hard drive, or other digital media in the face of challenges based on the particularity requirement, so long as the warrant limits seizure to relevant evidence.[4]  This rule is consistent with the handbook's instruction, cited by Defendant, that a

---

[4] See United States v. Richards, 659 F.3d 527, 539 (6th Cir. 2011) (collecting cases upholding warrants authorizing seizure and search of entire personal or business computers so long as the scope is limited to evidence of relevant crimes); United States v. Lee, No. 1:14-cr-227-TCB-2, 2015 WL 5667102, *3-4 (N.D. Ga. Sept. 25, 2015) (agreeing with "weight of the authority . . . that a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable"); United States v. Intakanok, No. CR 114-060, 2014 WL 4825368, *7-8 (S.D. Ga. Sept. 25, 2014) (upholding warrant authorizing search of email account, smartphone, and laptop where search and seizure limited to information related to crimes alleged because "a thorough search of these items was the only practical way to determine whether they contained evidence of the crime alleged"); In the Matter of a Warrant for All Content and Other Information Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google, Inc., 33 F. Supp. 3d 386, 394 (S.D.N.Y. 2014) (collecting federal cases upholding warrants requiring disclosure of "entire contents of [an] email account" to search and seize emails within limited categories contained in warrant).

warrant application "describe the information to be seized, and then request the authority to seize the information in whatever form it may be stored." (Doc. no. 58, p. 2.)

The first search authorization provides for retention of Defendant's digital media without limiting seizure to evidence concerning the alleged crime of possessing child pornography. SA McGee testified Cpt. Burford "granted verbal authorization for search and seizure of all digital media on Defendant's person and in his temporarily assigned barracks." (FTR 11:38:25 – 11:38:43.) The written affidavit, completed after the search, requested authorization to search and seize "all digital media." (Doc. no. 41-4, p. 3.) While the statements establishing probable cause are specific to the child pornography accusations, there is no mention of limiting seizure to relevant evidence. (Doc. no. 41-4.) The first search authorization was overly broad and violated the Fourth Amendment.

The second search authorization, in contrast, complies with the Fourth Amendment by limiting seizure of information on Defendant's cell phone to "any information related to this investigation, including but not limited to text/message communication with anyone pertaining to Mrs. Caudle and web browsing history." (Doc. no. 41-6, p. 3.) Likewise, in United States v. Rousseau, 628 F. App'x 1022 (11th Cir. 2015), a decision cited by the government, the warrant authorized searching all digital media but limited seizure to "'[e]vidence of possession, receipt, and distribution of child pornography.'" Id. at 1027.

As to the argument the first search application and authorization should have expressly asked for and authorized off-site examination of the digital media, the handbook states a military magistrate should "ensure that the affidavit provides reasonable justification for requesting an off-site search . . . ." (Doc. no. 57-2, p. 12.) While SA McGee did not explicitly request an off-site search, the affidavit describes "hundreds or thousands" of

images of child pornography located across several of Defendant's digital devices. (Doc. no. 41-4, p. 2.) Evidence of this many images is reasonable justification for an off-site search, and, reasonably construed, the application and authorization contemplate an off-site search. As to the March 30th search authorization, SA Ervin explicitly requested and was granted authorization for "seizure and subsequent full search" of Defendant's phone. (Doc. no. 41-6, p. 3.)

Furthermore, Federal Rule of Criminal Procedure 41 allows, by default, subsequent, off-site searches of electronically stored information. Rule 41(e)(2)(B) states, "Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Courts in this circuit regularly uphold the validity of off-site searches of electronically stored information pursuant to Rule 41.[5] Accordingly, Defendant's argument does not warrant suppression.

---

[5] See United States v. Taylor, 250 F. Supp. 3d 1215, 1232 (N.D. Ala. 2017) ("[A]s to electronic storage media or electronically stored information, the Federal Rules of Criminal Procedure specifically authorize a later review of the media or information consistent with the warrant.") (quotation omitted); Davis, 2018 WL 3061922, at *2 (upholding validity of search of defendant's devices following trial pursuant to Rule 41 where there was no restriction as to when government must complete its review), adopted by 2018 WL 2063938 (N.D. Ga. May 3, 2018); United States v. Perry, No. 1:16-CR-00334-MHC-LTW, 2017 WL 9473406, at *9 (N.D. Ga. Aug. 4, 2017) ("Rule 41(e)(2)(B) allows for a later off-site search of items seized pursuant to a warrant seeking electronically stored information."), adopted by 2017 WL 4031469 (N.D. Ga. Sept. 13, 2017); Lee, 2015 WL 5667102, *15 (upholding warrants authorizing off-site search of email account pursuant to Rule 41).

**8.    The Drastic Remedy of Exclusion Is Not Warranted For the Overbreadth Deficiency Found by the Court or Any of the Remaining Criticisms Argued by Defendant**

The judicially created remedy known as the exclusionary rule acts as a deterrent to Fourth Amendment violations by prohibiting admission of the resulting evidence.  <u>Martin</u>, 297 F.3d at 1312.  However, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean the exclusionary rule applies."  <u>Herring v. United States</u>, 555 U.S. 135, 140 (2009) (citing <u>Gates</u>, 462 U.S. at 223).  "Indeed, exclusion 'has always been our last resort, not our first impulse . . . .'"  <u>Id.</u> (quoting <u>Hudson v. Michigan</u>, 547 U.S. 586, 591 (2006)).  To warrant exclusion, "the benefits of deterrence must outweigh the costs," and the principal cost is "letting guilty and possibly dangerous defendants go free—something that offends basis concepts of the criminal justice system."   <u>Id.</u> at 141 (citations and internal quotations marks omitted).

The exclusionary rule thus does not apply to evidence "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate."  <u>United States v. Leon</u>, 468 U.S. 897, 913 (1984).  The inquiry is objective and asks "'whether a reasonably trained officer would have known that the search was illegal' in light of 'all the circumstances.'"  <u>Herring</u>, 555 U.S. at 145 (quoting <u>Leon</u>, 468 U.S. at 922 n.23).  The focus of the inquiry is the culpability and mindset of a reasonable officer because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  <u>Leon</u>, 468 U.S. at 916.

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  <u>Herring</u>, 555 U.S. at 144.  The exclusionary rule thus

31

applies to police conduct that is deliberate, reckless, or grossly negligent but not to isolated incidents of negligence.  United States v. Brooks, 648 F. App'x 791, 794 (11th Cir. 2016) (quoting Herring, 555 U.S. at 144).

The Leon court provided four examples of when an officer's reliance on a judge's determination of probable cause and "technical sufficiency of the warrant" might not be "objectively reasonable."  First, an affiant may submit an affidavit he knew was false or would have known was false except for his reckless disregard of the truth.  Leon, 468 U.S. at 923.  Second, the issuing judge may "wholly abandon" his or her detached and neutral judicial role such that no reasonably well-trained officer would rely on the warrant.  Id. Third, the affidavit supporting a warrant may be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id.  "Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  Id.

When considering this final example of a facially deficient warrant, it is important to keep in mind the following Leon admonition, made in the context of explaining the futility of excluding evidence to deter future police conduct when the officer's conduct is objectively reasonable:

> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.  In most such cases, there is no police illegality and thus nothing to deter.  It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  Once the warrant issues, there is literally nothing more

> the policeman can do in seeking to comply with the law.   Penalizing the
> officer for the magistrate's error, rather than his own, cannot logically
> contribute to the deterrence of Fourth Amendment violations.

Id. at 920–21 (internal citation and quotation marks omitted).   Certainly, therefore, a mere finding of overbreadth does not result in automatic application of the exclusionary rule. Indeed, "there is no doubt that 'the good faith exception may be applied to a search conducted pursuant to an overly broad warrant." United States v. Haynes, 160 F. App'x 940, 944 (11th Cir. 2005) (quoting United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000)).

After careful consideration of the first search authorization issued by Cpt. Burford, the Court is convinced a reasonably trained officer would not have realized the search authorization was constitutionally deficient because it failed to specify the types of electronic evidence stored within digital media SA McGee could seize.   This sole defect in the search authorization did not render it so facially deficient that a reasonably trained officer could not presume it to be valid.   The oversight cannot be fairly characterized as intentional misconduct, recklessness, or gross negligence.   It is, at most, a mistake, oversight, or isolated act of negligence by the issuing military magistrate, not the investigator, that does not merit the drastic remedy of exclusion.

The Court's conclusion finds direct support in the above passages from Leon and Herring.   Also instructive is Haynes, wherein a defendant convicted of enticing a minor claimed error in the denial of his motion to suppress child pornography images found on his home computer.   Haynes, 160 F. App'x at 943.   The defendant claimed the search warrant lacked probable cause and was overly broad because the investigation concerned enticement of a child but the warrant authorized seizure of "all computers and computer hardware" in

addition to seizure of "all digital data files pertaining to the possession, receipt, or distribution of child pornography."  Id.  Sidestepping the question of overbreadth, the Eleventh Circuit unhesitatingly found Leon good faith because "[t]he officers here clearly acted in reasonable reliance on the warrant."  Id. at 944.  Similarly in Travers, the Eleventh Circuit concluded a capacious warrant issued in a mortgage fraud investigation was overly broad but nevertheless found Leon good faith because the overbreadth determination was a "close call" and reasonable officers could have reasonably presumed the warrant to be valid. 233 F.3d at 1331-32.

A helpful study in contrast that further buttresses the Court's conclusion here is the Supreme Court's ruling in Groh v. Ramirez, 540 U.S. 551, 562 (2004).  At issue in Groh was a warrant that failed to describe the items to be seized.  Instead, in the space designated for this purpose, the warrant merely described a two-story blue house.  Id. at 554.  The homeowner sued the executing agents, and the Supreme Court held the warrant was "plainly invalid" under the Fourth Amendment and the agents were not entitled to qualified immunity.  Id. at 557-59.  Because the objective reasonableness standard for qualified immunity is the same standard that determines Leon good faith, there is little doubt the Court in Groh would have applied the exclusionary rule in the criminal context.

The key distinction, however, is that the warrant in Groh contained no description of the items to be seized while here, the search authorization specified the location as being Defendant's person and barracks and further specified the items to be seized as Defendant's digital media.  While any reasonably trained officer would understand a search warrant must specify the items to be seized and cannot merely list an address of a house, they might not understand a warrant specifying digital media must further specify the types of information

that can be seized from the digital media.  Simply stated, the <u>Groh</u> deficiency is blatant while the deficiency here is not, at least for now under the current state of the law.  Indeed, there is no Eleventh Circuit or Supreme Court decision directly on point, and the Court conducted nationwide research before it could articulate with confidence the constitutional minimum. <u>See</u>, § II.G.7, *supra*.

Furthermore, at least one decision from the Eleventh Circuit can be construed to suggest the Fourth Amendment does not require such particularity.  <u>See</u> <u>United States v. Beckett</u>, 369 F. App'x 52, 55-57 (11th Cir. 2010) (holding warrant sufficiently particularized even though it generally authorized search of defendant's computer).  There can be no finding of objectively unreasonable reliance by an officer if, for example, the legal reasoning for finding a warrant to be invalid is sufficiently murky to have created "disagreement among thoughtful and competent judges . . . ."  <u>Leon</u>, 468 U.S. at 926.  For all of these reasons, the Court determines "'the extreme sanction of exclusion'" is not warranted.  <u>Herring</u>, 555 U.S. at 140.

In addition to the Court's determination exclusion is not warranted based on the general principles espoused in <u>Leon</u> and its progeny, the Court also follows other circuits, which have specifically determined exclusion was not warranted in similar circumstances.  In <u>United States v. Riccardi</u>, 405 F.3d 852, 861-63 (10th Cir. 2005), the court held a warrant authorizing a computer search was not sufficiently particular because it failed to limit the search and seizure to evidence of specific federal crimes or specific types of material.  Nevertheless, the court determined the warrant was executed in good faith and suppression was not warranted because:  (1) the affidavit limited the search to child pornography; (2) the officers executing the warrant were involved throughout and one of the executing officers

wrote the affidavit to support the warrant application; (3) the agent performing the search of the computer stopped to ask a superior if the warrant was sufficient; (4) the search methodology was limited to finding child pornography; and (5) investigators seized only evidence relevant to the crimes identified in the affidavit.  Id. at 863-64.

These factors support the Court's conclusion.  First, SA McGee clearly stated by affidavit the investigation was limited to possession of child pornography.  (Doc. no. 41-4, p. 2.)  Second, SA McGee immediately contacted SA Williams after obtaining the search authorization, they performed the initial search and seizure together, and SA Williams was involved throughout the remainder of the investigation.  He performed the forensic examination of the Google Pixel cell phone and provided specific instructions for forensic examination of the remaining devices by SA Livingston.  Third, Cpt. Burford reviewed the search request and approved it as sufficient.

Fourth, the search methodology was limited to finding evidence concerning possession of child pornography and, finally, investigators seized only such evidence.  Mr. Persinger testified SA Williams should have limited the scope of the search to videos and images by deselecting all other categories of information for loading from the phone to the Cellebrite dump file, thereby making it impossible for SA Williams to search in Cellebrite digital categories unrelated to possession of child pornography.  First, SA Williams was not required to limit the scope of the examination to only images and videos because there was no such restriction in the search authorization and, as Mr. Persinger admitted, other types of information, such as cookie text files from child pornography websites, could constitute evidence of possession of child pornography.

Second, while SA Williams loaded all categories of information from the cell phone to the Cellebrite dump file except phone calls and text messages, SA Williams testified he then limited his review in Cellebrite to the categories he believed could contain evidence of child pornography.  Indeed, SA Williams testified the search methodology was limited to finding child pornography and only evidence relevant to the crime of possession of child pornography was seized.  Mr. Persinger has found nothing to suggest otherwise.

Also, in United States v. Rosa, 626 F.3d 56 (2d Cir. 2010), the court held a warrant lacked the requisite specificity by failing to link the items to be searched and seized to the suspected criminal activity.  However, the court determined the exclusionary rule should not apply because:  (1) the application documents were drafted, the warrant was issued, and the search occurred within approximately three hours; (2) the investigator's affidavit "[made] clear that the purpose of the search was to obtain evidence of child pornography . . ."; (3) the application and affidavit specifically requested permission to seize evidence depicting sexual exploitation of children; (4) the investigator swore, based on his training, the items to be searched and seized would likely reveal evidence of child pornography; (5) the same investigator was the affiant, led the execution of the search warrant, and performed the later search of the digital media; and (6) there was no evidence the officers searched for or seized any items unrelated to the crimes for which probable cause had been shown or the investigator misled the magistrate regarding the facts of the investigation and intended scope of the search.  Id. at 64-65.

Factors two through six are clearly satisfied here, as just explained above in the context of Riccardi.  The first factor is satisfied as well because SA McGee obtained the verbal search authorization approximately 6:45 p.m. and the officers arrived at Defendant's

barracks to execute the search at approximately 8:30 p.m.  (Doc. no. 41-3, p. 3; FTR 11:41:36 – 11:41:56; 11:42:47 – 11:43:01.)

Turning momentarily to all remaining criticisms by Defendant of the investigation, search authorization, and application, rejected in §§ II.G.1-7, *supra*, the Court finds <u>Leon</u> good faith would apply even in the event of a statutory or constitutional violation.  There is no evidence the investigators provided false information or recklessly disregarded the truth.  Nor is there evidence the military magistrate "wholly abandoned" a detached and neutral role in issuing the search authorization.  The search authorization application established probable cause, and the search authorizations are not so facially deficient in any respect that the executing officers could not reasonably presume them to be valid.

## III.   CONCLUSION

For these reasons, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss, (doc. no. 39), motion to suppress, (doc. no. 38), and supplemental motion to suppress, (doc. no. 58), be **DENIED**.

SO REPORTED and RECOMMENDED this 28th day of June, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA